CORRIGAN, J.
In this case, we consider the correct method for counting prior felonies under Michigan’s habitual offender statutes, MCL 769.10, 769.11, 769.12, and 769.13. These statutes establish escalating penalties for offenders who are repeatedly convicted of felonies. This Court has ruled that the statutes imply that each predicate felony must arise from separate criminal incidents. People v Preuss, 436 Mich 714; 461 NW2d 703 (1990); People v Stoudemire, 429 Mich 262; 414 NW2d 693 (1987), mod by Preuss, supra at 739. Therefore, multiple felonies that arise from the same criminal incident or transaction count as a single felony under the habitual offender laws.
We conclude that the holdings of Stoudemire and Preuss directly contradict the plain text of the statutes. Therefore, we overrule these cases. The unambiguous statutory language directs courts to count each separate felony conviction that preceded the sentencing offense, not the number of criminal incidents resulting in felony convictions. Accordingly, defendant was properly sentenced and we affirm his sentences.
I. FACTS AND PROCEDURAL HISTORY
In 2001, a jury convicted defendant, Caprese D. Gardner, of second-degree murder, MCL 750.317, being a felon in possession of a firearm (felon in possession), MCL 750.224f, and possessing a firearm during the commission of a felony (felony-firearm), MCL 750.227b. *45 The facts underlying his convictions do not bear on the current question before this Court. On August 30, 2001, the circuit court sentenced defendant as a third offense habitual offender, MCL 769.11, to concurrent prison terms of 25 to 50 years for the murder conviction and 2 to 10 years for the felon in possession conviction and a consecutive term of 5 years for the felony-firearm conviction. On direct appeal, defendant challenged several of the circuit court’s evidentiary rulings, but did not raise the present issue. The Court of Appeals affirmed his convictions and sentences.[1] This Court denied defendant’s subsequent application for leave to appeal.[2]
In 2004, defendant sought relief from judgment under MCR 6.501 et seq. He argued that his appointed trial and appellate attorneys had provided constitutionally ineffective representation because they failed to investigate and challenge the two prior convictions underlying his third offense habitual offender status. For purposes of the habitual offender enhancement, defendant had stipulated at trial prior convictions of felonious assault and felony-firearm. In his motion for relief from judgment, defendant claimed that both of those convictions, for which he had been sentenced on February 25, 1988, arose from the same criminal act. Accordingly, he asserted that the two convictions should have been counted as a single prior felony conviction for purposes of applying the habitual offender laws under Stoudemire and Preuss. Thus, defendant argued that he should have been sentenced only as a second offense habitual offender, MCL 769.10, and therefore would have been exposed to potentially shorter prison terms for his murder and felon in possession convictions. He *46 also argued that he had good cause for belatedly raising this issue in a motion for relief from judgment under MCR 6.508(D)(3)(a) because his appellate attorney was constitutionally ineffective for failing to recognize and raise the issue in defendant’s prior appeal.
The circuit court denied defendant’s motion, opining that defendant had not established good cause for his failure to raise this issue in his prior appeal. The Court of Appeals denied defendant’s application for leave to appeal “for failure to meet the burden of establishing entitlement to relief under MCR 6.508(D).”[3]
Defendant then applied for leave to appeal in this Court. We heard oral argument on whether to grant his application or take other peremptory action. We directed the parties to address whether Preuss and Stoudemire “correctly held that multiple convictions arising out of a single criminal incident may count as only a single prior conviction for habitual offender purposes and, if so, whether the defendant is entitled to be resentenced.”[4]
II. STANDARDS OF REVIEW
The primary question requires us to interpret Michigan’s habitual offender statutes. This Court reviews de novo questions of statutory interpretation. People v Buehler, 477 Mich 18, 23; 727 NW2d 127 (2007). We also review de novo the ultimate constitutional question whether an attorney’s ineffective assistance deprived a defendant of his Sixth Amendment[5] right to counsel. People v LeBlanc, 465 Mich 575, 579; 640 NW2d 246 (2002).
*47 III. ANALYSIS
Defendant was sentenced as a third offense habitual offender under MCL 769.11, which reads, in pertinent part:
If a person has been convicted of any combination of 2 or more felonies or attempts to commit felonies, whether the convictions occurred in this state or would have been for felonies or attempts to commit felonies in this state if obtained in this state, and that person commits a subsequent felony within this state, the person shall he punished upon conviction of the subsequent felony and sentencing under section 13 of this chapter as follows .... [MCL 769.11(1) (emphasis added).]
The same relevant language has appeared in each habitual offender statute[6] since 1978.[7] In 1987 and 1990, respectively, the Stoudemire and Preuss courts concluded that these statutes imply a same-incident or single-transaction method of counting prior felonies for purposes of sentencing enhancement. Accordingly, each predicate felony must “arise from separate criminal incidents.” Preuss, supra at 717.
Habitual offender status may increase a defendant’s minimum and maximum sentences.[8] The sentencing judge generally has the option to increase a repeat offender’s maximum sentence.[9] The high end of the statutory recommended minimum sentence range un *48 der the sentencing guidelines (the maximum minimum) also increases on the basis of the number of prior convictions. Second offense, third offense and fourth offense[10] habitual offenders face increases in their maximum minimums of 25 percent, 50 percent and 100 percent, respectively. MCL 777.21(3)(a) through (c).
Here, defendant would have been subject to a maximum penalty of life in prison for his second-degree murder conviction even without an habitual offender enhancement. His unenhanced minimum sentence range — based on a prior record variable score of 20 and an offense variable score of 65 — was 180 to 300 months. MCL 777.61. Because he was sentenced as a third offense habitual offender, MCL 769.11(1), he was subject to an enhanced minimum sentence range of 180 to 450 months (a maximum minimum of 300 months increased by 50 percent), MCL 777.21(3)(b).
Defendant argues that, under Stoudemire and Preuss, he should have been sentenced only as a second offense habitual offender, MCL 769.10(1), because his two prior felony convictions arose from the same criminal incident. If he had been sentenced as a second offense habitual offender, his statutory minimum sentence range would have been 180 to 375 months (a maximum minimum of 300 months increased by 25 percent). Although his 300-month (25-year) minimum sentence falls within the minimum sentence ranges for both second and third offense habitual offenders, as well as the enhanced range, defendant correctly argues that, if the circuit court relied on an inaccurate higher range when it imposed the sentence, resentencing *49 would be required. People v Francisco, 474 Mich 82, 89-92; 711 NW2d 44 (2006).
The prosecution does not contest defendant’s claim that his two prior felony convictions of felonious assault and felony-firearm arose from the same criminal incident. The prosecution also concedes that defendant may raise the issue in his current motion for relief from judgment because, if Stoudemire and Preuss correctly interpreted the habitual offender statutes, defendant has been prejudiced by the constitutionally ineffective assistance of his appointed trial and appellate attorneys.[11] The prosecution argues, however, that Stou *50 demire and Preuss were incorrectly decided and that defendant was properly sentenced as a third offense habitual offender under the plain language of the statute. We agree.
Our goal in construing a statute is “to ascertain and give effect to the intent of the Legislature.” People v Pasha, 466 Mich 378, 382; 645 NW2d 275 (2002). The touchstone of legislative intent is the statute’s language. “If the statute’s language is clear and unambiguous, we assume that the Legislature intended its plain meaning and we enforce the statute as written.” People v Weeder, 469 Mich 493, 497; 674 NW2d 372 (2004). Accordingly, when statutory language is unambiguous, judicial construction is not required or permitted.[12] Id.
Here, the relevant language states that [i]f a person has been convicted of any combination of 2 or more felonies or attempts to commit felonies .. . and that person commits a subsequent felony within this state,” the person shall be sentenced under the habitual offender laws. MCL 769.11(1). The text clearly contemplates the number of times a person has been “con *51 victed” of “felonies or attempts to commit felonies.” Nothing in the statutory text suggests that the felony convictions must have arisen from separate incidents. To the contrary, the statutory language defies the importation of a same-incident test because it states that any combination of convictions must be counted. Indeed, Stoudemire and Preuss essentially acknowledged the clear import of the language. Nonetheless, in each case, the Court explicitly ignored the text, turning instead to legislative history and the Court’s own views regarding the intents of the New York and Michigan legislatures.[13]
In 1987, the Stoudemire Court offered an initial interpretation of the relevant statutory language by observing that the original language of Michigan’s habitual offender statutes, enacted by 1927 PA 175, was borrowed almost wholesale from New York’s habitual offender statutes. Stoudemire, supra at 267. Accordingly, the Court referred to the remarks of the New York statutes’ author, New York State Senator Caleb Baumes, who opined that the statutes were aimed at protecting the public from the professional criminal “ ‘who has been convicted once, twice, three times, sentenced and served his time and come . . . out and resumed operations again....’” Id. at 268, quoting Baumes, The Baumes law and legislative program in New York, 52 ABA Rep 511, 521 (1927) (emphasis added in Stoudemire). The Court concluded that New York *52 courts had interpreted the New York statutes in keeping with Baumes’s intent by establishing “that multiple convictions on the same day constitute only one ‘conviction’ for purposes of the habitual offender statute.” Stoudemire, supra at 269, citing People v Spellman, 136 Misc 25; 242 NYS 68 (1930). The Stoudemire Court acknowledged, but rejected, other New York cases that conflicted with Spellman, concluding that “[t]hese opinions do not reflect awareness of the legislative intent clearly expressed by Senator Baumes” and observing that those courts’ construction of the statutes had been superseded when the New York Legislature amended the statutes. Stoudemire, supra at 269 n 14. The Stoudemire Court concluded:
By borrowing New York’s statute in its entirety, the Legislature indicated that it was motivated by the same purpose that underlay the New York statute. The Legislature intended that the habitual offender statute’s fourth-felony provision, like the parallel provision in the New York statute, should apply only to a person who had had three opportunities to reform — who had been convicted and sentenced and then subsequently committed another felony for which he was also convicted and sentenced, and then subsequent to the second conviction committed yet another felony, for which he was again convicted and sentenced. [Id. at 271 (emphasis added).]
The Court also compared the intents of legislatures in other jurisdictions — as interpreted by courts in those jurisdictions — that had adopted methods for counting felonies based on whether the offenses grew out of the same occurrence, were committed on the same day, or were charged in the same indictment. Id. at 272-276. In accord, the Court held, consistently “with the legislative purpose underlying the habitual offender statute, that multiple convictions arising out of a single incident may count as only a single prior conviction for purposes *53 of the statute.” Id. at 278. The Court concluded that, to the extent that the statutory text read otherwise, the Court should focus on legislative intent in order to avoid absurdity, hardship, or injustice. Id. at 266-267.
Significantly, Stoudemire avoided the import of the statutory text, in part, by dismissing the Legislature’s 1978 revisions of the text in 1978 PA 77. Before 1978, the relevant portion of MCL 769.11 stated: “A person who after having been twice convicted within this state of a felony or an attempt to commit a felony .. . commits any felony within this state, is punishable upon conviction as [provided in this section].” (Emphasis added.)[14] Despite the revisions, the Stoudemire majority nonetheless relied on its perceptions of the history of the original 1927 act. The Court explicitly recognized that “the phrase Tf a person has been convicted of 3 or more felonies,’ arguably has a different import than the phrase ‘A person who after having been 3 times convicted ....’” Stoudemire, supra at 278. But the Court dismissed this significant change, concluding that “when considered in the context of the other changes made in the statute it is clear that the Legislature intended only to improve the statute’s grammar, not to alter its underlying meaning.” Id.[15]
In 1990, the Preuss Court refined the Stoudemire holding by clarifying that the prior offenses need not *54 “be separated by intervening convictions or sentences,” but it retained the rule “that a defendant’s prior offenses must arise from separate incidents.” Preuss, supra at 737. Specifically, by reference to the fourth offense habitual offender statute, the Court concluded that
the statute does not require that a fourth offender’s three prior convictions, the sentences for those convictions, or the offenses upon which those convictions and sentences are based, occur in any particular sequence. The statute requires only that the fourth offense be preceded by three convictions of felony offenses, and that each of those three predicate felonies arise from separate criminal incidents. [Id. at 717 (emphasis added).]
Preuss criticized the Stoudemire Court’s “flawed” interpretation of Michigan’s statutes, concluding that the Stoudemire Court had erred in its attempt to divine the intent underlying the New York statutes on which Michigan’s statutes were modeled. Id. at 720, 727-731. For instance, Preuss observed that Stoudemire had “relied erroneously on the only New York decision that held that a fourth offender’s second and third offenses must each follow conviction and sentence on the earlier offense.” Id. at 727. Further, the Preuss Court opined that Senator Baumes’s comments did not establish his intent “on the issue of the sequentiality of prior convictions.” Id. at 729. Perhaps most significantly, the Preuss Court observed that, to the extent that Baumes’s views suggested “that the fourth offense must follow a completed sentence,” his views “conflict[ed] with the language of 1927 PA 175, which literally requires only that the commission of the fourth offense follow three prior ‘convictions,’ not sentences.” Id. at 730 (emphasis in original).
Thus, the Preuss Court acknowledged that the unambiguous statutory language — “If a person has been convicted of any combination of 3 or more felonies or *55 attempts to commit felonies .. . and that person commits a subsequent felony” — refers only to the number of prior felony convictions and “implies that no particular sequence for the first three offenses or convictions was intended.” Id. at 720-721, 730. Nonetheless, the Court chose to disregard this language, opining that “a literal reading of a statute may be modified if that reading leads to a clear or manifest contradiction of the apparent purpose of the act, or if necessary to correct an absurd and unjust result.. . .”[16] Id. at 721. Accordingly, the Court “turn[ed] to sources of legislative intent other than the language to determine whether declining to read into the statute a sequentiality requirement for predicate offenses would contradict the Legislature’s purpose in enacting the statute.” Id. at 721.
In doing so, the Preuss Court erred when it construed the unambiguous terms of the statute by reference to legislative history. Weeder, supra at 497. Ironically, not *56 only did it reject the Stoudemire Court’s attempt at the same task, but its opinion highlights the problems inherent in such attempts by offering a different judicial construction of the inconclusive “history” of the very same enactments.[17] Further, Preuss failed to grapple at all with the import of the 1978 revisions, relying instead — just as the Court had in Stoudemire — on its impressions of the Legislature’s intent when adopting the original 1927 language. On the basis of these impressions, Preuss concluded that the “legislative history of the statute suggests that it was directed at the ‘persistent’ or ‘repeat’ offender.” Preuss, supra at 738. Having reached this conclusion, the Court then interpreted the statute as if these words appeared in its text, stating:
*57 A common-sense interpretation of these phrases is that the Legislature did not have in mind the person who had only one criminal episode in which he managed to commit several different crimes. Instead, “repeat” suggests some time interval between crimes, and “persistent” suggests a criminal who continues in his criminal pursuits after these intervals. Neither of these concepts may easily be reconciled with an interpretation of the statute which would allow a court to impose fourth-offender penalties on a defendant whose three prior convictions arose out of the same criminal incident. \Id.'\
We reject the approaches of both Stoudemire and Preuss, which run counter to principles of statutory construction. Indeed, in criticizing Stoudemire, the Preuss Court reinterpreted the very history on which Stoudemire relied and reached a different result. Thus, these two opinions exemplify the problems inherent in preferring judicial interpretation of legislative history to a plain reading of the unambiguous text. As we have stated, construing an unambiguous statute by relying on legislative history “ ‘[a]t the very most.. . allows the reader, with equal plausibility, to pose a conclusion of his own that differs from that of the majority.’ ” Donajkowski v Alpena Power Co, 460 Mich 243, 259; 596 NW2d 574 (1999), quoting Rogers v Detroit, 457 Mich 125, 164; 579 NW2d 840 (1998) (TAYLOR, J., dissenting), which was overruled by Robinson v Detroit, 462 Mich 439 (2000).[18] Further, “not all legislative history is of *58 equal value .. . In re Certified Question, 468 Mich 109, 115 n 5; 659 NW2d 597 (2003). Some historical facts may allow courts to draw reasonable inferences about the Legislature’s intent because the facts shed light on the Legislature’s affirmative acts. For instance, we may consider that an enactment was intended to repudiate the judicial construction of a statute, or we may find it helpful to compare multiple drafts debated by the Legislature before settling on the language actually enacted. Other facts, however, such as staff analyses of legislation, are significantly less useful because they do not necessarily reflect the intent of the Legislature as a body. Id. Shifting interpretations of the intent of the New York Legislature — particularly as embodied in the comments of a single state senator— certainly fall into this latter category.
Significantly, defendant here essentially concedes that a proper interpretation of the habitual offender statutes precludes the use of a same-incident method for counting prior convictions. Defendant merely advances policy considerations and suggests that the Legislature has acquiesced to the interpretations of the statutes offered by this Court in Stoudemire in Preuss. But, as with attempts at divining legislative intent from legislative history, “legislative acquiescence is an exceedingly poor indicator of legislative intent.” Donajkowski, supra at 258. Instead, “sound principles of statutory construction require that Michigan courts determine the Legislature’s intent from its words, not from its silence.” Id. at 261; see also People v Hawkins, 468 Mich 488, 507; 668 NW2d 602 (2003) (“As we have repeatedly stated, the ‘legislative acquiescence’ prin *59 ciple of statutory construction has been squarely rejected by this Court because it reflects a critical misapprehension of the legislative process.”). As we observed in Donajkowski, “ ‘ [c]ommentators have noted that one can posit myriad reasons explaining the Legislature’s failure to correct an erroneous judicial decision ....’” Donajkowski, supra at 259, quoting Rogers, supra at 164 n 2 (TAYLOR, J., dissenting). Moreover, “ ‘it should not be assumed that the Legislature even agrees it has a duty to correct interpretations by the courts that it considers erroneous.’ ” Donajkowski, supra at 260, quoting Rogers, supra at 164-165 (TAYLOR, J., dissenting). Indeed, as Justice TAYLOR observed, “ ‘[i]n Autio v Proksch Construction Co, 377 Mich 517, 527; 141 NW2d 81 (1966), Justice SOURIS described [the doctrine of legislative acquiescence] as “a pernicious evil designed to relieve a court of its duty of self-correction” ....’” Donajkowski, supra at 260, quoting Rogers, supra at 165 (TAYLOR, J., dissenting). See Donajkowski, supra at 258-262, for a full discussion.[19]
When the Legislature’s language is clear, we are bound to follow its plain meaning. The Legislature is *60 fully capable of amending statutory language if it sees fit to do so. Indeed, legislatures throughout the country have enacted habitual offender statutes that explicitly include same-incident methods for counting prior felonies. Arizona’s habitual offender laws, for instance, explicitly provide: “Convictions for two or more offenses committed on the same occasion shall be counted as only one conviction for purposes of this section.” Ariz Rev Stat Ann 13-604(M) (emphasis added).[20] The California Penal Code provides that “any person convicted of a serious felony who previously has been convicted of a serious felony ... shall receive ... a five-year enhancement for each such prior conviction on charges brought and tried separately.” Cal Penal Code 667(a)(1) (emphasis added). The Illinois habitual offender laws offer a particularly helpful comparison because the definition of habitual offender status includes general language somewhat similar to that in our own statutes:
Every person who has been twice convicted in any state or federal court of an offense that contains the same elements as an offense now classified in Illinois as a Class X felony, criminal sexual assault, aggravated kidnapping or first degree murder, and is thereafter convicted of a Class X felony, criminal sexual assault or first degree murder, committed after the 2 prior convictions, shall be adjudged an habitual criminal. [720 III Comp Stat 5/33B-1(a) (emphasis added).]
The statute also explicitly provides, however, that “[a]ny convictions which result from or are connected with the same transaction, or result from offenses committed at the same time, shall be counted for the *61 purposes of this Section as one conviction.” 720 III Comp Stat 5/33B-1(c) (emphasis added).[21]
For these reasons, we overrule Stoudemire and Preuss. “[S]tare decisis is not to be applied mechanically to forever prevent the Court from overruling earlier erroneous decisions determining the meaning of statutes.” Robinson v Detroit, 462 Mich 439, 463; 613 NW2d 307 (2000). Rather, if a case was incorrectly decided, we have a duty to reconsider whether it should remain controlling law. Id. at 464. In doing so, we “review whether the decision at issue defies ‘practical workability,’ whether reliance interests would work an undue hardship, and whether changes in the law or facts no longer justify the questioned decision.” Id. These criteria weigh in favor of overruling Stoudemire and Preuss.
Most significantly, the same-incident test has not created reliance interests that will be thwarted by *62 overruling Stoudemire and Preuss; overruling these cases will not cause “significant dislocations” or frustrate citizens’ attempts to conform their conduct to the law. See id. at 466-467. “[T]o have reliance the knowledge must be of the sort that causes a person or entity to attempt to conform his conduct to a certain norm before the triggering event.” Id. at 467. The nature of a criminal act defies any argument that offenders attempt to conform their crimes — which by definition violate societal and statutory norms — to a legal test established by Stoudemire and Preuss. Moreover, to the extent that these cases implicate reliance interests, such interests weigh in favor of overruling them. Michigan citizens and prosecutors should be able to read the clear words of the statutes and “expect... that they will be carried out by all in society, including the courts.” Id.
In fact, should a court confound those legitimate citizen expectations by misreading or misconstruing a statute, it is that court itself that has disrupted the reliance interest. When that happens, a subsequent court, rather than holding to the distorted reading because of the doctrine of stare decisis, should overrule the earlier court’s misconstruction. [M]
We also note that the factor of practical workability bears little on our decision to overrule our previous erroneous interpretations of the habitual offender laws. The Legislature’s clear directive to count each felony is no less workable — and indeed is arguably simpler to apply in practice — than the current, judicially imposed same-incident rule.
IV RESPONSE TO THE DISSENTS
Justice CAVANAGH concedes that our interpretation “may, arguably, be supported by the language of the habitual-offender statutes . . . .” Post at 73. But his *63 arguments are rooted in his assertion that there are “competing, arguably plausible interpretations .. . .”[22] Post at 74. He then concludes that, because purported competing interpretations are possible, it is appropriate to consult legislative history and apply the rule of lenity. Post at 75-76. To the contrary, as we have explained and as defendant essentially concedes, there is nothing textually ambiguous about the Legislature’s directive to apply habitual offender sentencing laws when “a person has been convicted of any combination of 2 or more felonies or attempts to commit felonies....” MCL 769.11(1).
In his only argument based on the text of the statute, Justice CAVANAGH asserts that the statute’s use of the phrase “subsequent felony” indicates that enhancement does not apply to simultaneous criminal acts. Post at 72.[23] We agree that, if an offender is convicted and sentenced for two simultaneous felonies, neither simultaneous conviction may be used to enhance the sentence for the other under the habitual offender statutes. But Justice CAVANAGH’s extension of this point to imply a same-incident test misinterprets the statute’s use of the word “subsequent.” “Subsequent” describes the sequential relationship between the sentencing felony and the prior convictions (“If a person has been convicted of any combination of. .. felonies or attempts to commit felonies . . . and that person commits a subsequent felony....”). “Subsequent” does not describe a relationship among the prior convictions.
*64 Justice CAVANAGH also purports to rely on “this Court’s consistent statements concerning the purpose of the habitual-offender statutes.” Post at 73. He cites cases from 1929, the 1940s, and, most recently, 1970 and 1976. Post at 70, 73 n 6, and 73. Yet, as Justice CAVANAGH acknowledges, the Legislature amended the statutes in 1978. 1978 PA 77. He ignores the import of the 1978 revisions, as did the Court in Stoudemire and Preuss. Thus, he urges that “in more than 150 years, no Michigan court has ever held, until today, that convictions for multiple crimes committed in a single criminal transaction count as separate convictions for habitual-offender purposes.” Post at 78, citing People v Palm, 245 Mich 396, 400; 223 NW 67 (1929). Justice KELLY similarly opines that the “1978 amendments did not alter the command that ‘multiple convictions arising out of a single incident may count as only a single prior conviction under the statute ....’” Post at 86. But, instead of explaining this conclusory statement, she merely cites Preuss. Post at 86-87.
We reject the dissents’ suggestions that this Court should divine legislative intent not from the Legislature’s enactments, but from precedent of this Court that preexisted those enactments. Indeed, this Court addressed this very reasoning when we overruled Dedes v Asch, 446 Mich 99; 521 NW2d 488 (1994), in Robinson. We explained:
The majority in Dedes interpreted the phrase “the proximate cause” to mean “a proximate cause.” It did this on the basis of an analysis that not to do so would produce a marked change in Michigan law, and that the Legislature, in its “legislative history,” gave no indication that it understood that it was making such a significant change. This approach can best be described as a judicial theory of legislative befuddlement. Stripped to its essence, it is an endeavor by the Court to use the statute’s “history” to *65 contradict the statute’s clear terms. We believe the Court had no authority to do this. [Robinson, supra at 459-460.]
The Legislature has no duty to satisfy us that its legislative enactment is a “good” one. Legislation must be constitutional; this alone is enough. Once the Legislature has cleared the hurdle of constitutionality, we are to treat its enactment as law. When, as here, the text enacted by the Legislature and signed by the Governor is unambiguous, our duty is to uphold its plain meaning.
Both dissents’ analyses would essentially require the Legislature to explain to this Court’s satisfaction its reasons for changing the statutory text. The Legislature has no such duty to us and, because its text is clear, it is irrelevant whether the legislators concluded that this Court misinterpreted the pre-1978 statutes in its previous decisions or, instead, that a new policy for counting prior felonies was preferable. Significantly, various legislators’ reasons for enacting the text may have differed and may have been rooted in either of these conclusions. But their agreed-on choice of language is controlling. If that language is perfectly forthright, our task is simply to implement it. We reject the implications of the dissents’ views, which would ultimately require the Legislature, when amending laws, to add redundant explanations for its otherwise plain language such as: “By X, we mean X. We do not mean the Supreme Court’s previous interpretations of Y.”
We express no opinion regarding the correctness of any court’s interpretations of the pre-1978 versions of the statutes. Questions concerning earlier versions of the text are not before us. Moreover, to whatever extent courts correctly divined past legislatures’ intents using previously enacted language, those intents should not guide our interpretation of the unambiguous language *66 of the current versions of the statutes; the acts of past legislatures do not bind the power of successive legislatures to enact, amend, or repeal legislation. Studier v Michigan Pub School Employees’ Retirement Bd, 472 Mich 642, 660; 698 NW2d 350 (2005). In this case, we acknowledge the Legislature’s explicit changes to the statutory language and, in doing so, by no means do we employ “a new view of statutory interpretation,” as Justice CAVANAGH contends. Post at 78 n 12. To the contrary, we consider the statute’s plain language, and it is difficult to imagine how the Legislature could possibly have written the statute to more clearly indicate that all prior convictions count than by stating that “[i]f a person has been convicted of any combination of 2 or more felonies or attempts to commit felonies . . . and that person commits a subsequent felony within this state, the person shall be punished [as provided in this section].” MCL 769.11(1) (emphasis added).
Significantly, Justice CAVANAGH’s central contention is that the habitual offender statutes “are plainly intended to apply to habitual offenders, individuals who persist in criminal activity regardless of their prior convictions.” Post at 70. But the goal of punishing persistent offenders by no means requires a same-incident test. Rather, the Legislature apparently and reasonably saw fit to punish an offender who has committed multiple prior felonies in a harsher manner than an offender who has committed only a single prior felony. We see no reason why the Legislature may not punish persistence by discriminating in a graduated fashion among those who have committed a single prior felony, MCL 769.10, those who have committed two prior felonies, MCL 769.11, and those who have committed three or more prior felonies, MCL 769.12, regardless of whether the offender committed the prior felonies on a single occasion. In sum, Justice CAVANAGH’s analysis is fundamentally flawed because it offers a judi *67 cial construction to deconstruct an unambiguous statute. Nothing about the statute’s text renders it susceptible to multiple interpretations and, therefore, judicial “construction” is not even permissible. Further, Justice CAVANAGH repeats the mistakes of the Court in Stoudemire and Preuss by dismissing the 1978 revisions of the habitual offender laws and, instead, relying on debatable legislative history and court cases addressing the previous versions of the statutes.
Finally, Justice Kelly’s exegesis of the doctrine of stare decisis misses the mark. As we have already discussed, the recent Stoudemire and Preuss decisions are not part of a long line of cases interpreting identical statutory language; rather, Stoudemire and Preuss purported to interpret the post-1978 language. Moreover, the Stoudemire and Preuss decisions are themselves inconsistent precedents. Justice KELLY would maintain Preuss as stare decisis because it is workable, free from absurdity, “not mischievous in practice,” and no changes in the law or facts undermine it. Post at 89. But the same things can be said of Stoudemire. Accordingly, the heart of Justice KELLY’s analysis contradicts her preference for Preuss, which itself overruled Stoudemire in part. Indeed, as we have thoroughly discussed, Preuss exemplifies the need for adhering to plain statutory language instead of upholding precedent merely for precedent’s sake. The Preuss Court followed Stoudemire in choosing to avoid the plain statutory text. Stoudemire, supra at 278; Preuss, supra at 720-721. But Preuss then overruled Stoudemire in part after selectively reinterpreting other states’ caselaw, comments by legislators, and committee reports addressing the original 1927 Michigan act and the prior New York act. For these reasons, upholding Preuss certainly would not serve to “ ‘avoid an arbitrary discretion in *68 the courts Post at 81, quoting The Federalist No. 78, p 471 (Alexander Hamilton) (Clinton Rossiter ed, 1961). To the contrary, binding the Court to “strict rules” — such as the tenets of statutory interpretation —avoids arbitrariness.[24] Post at 81. Moreover, as we have explained, there is nothing “destabilizing” about today’s decision under Robinson or otherwise. See post at 80, 82. No undue hardship will result because of reliance on our previous holdings, nor will we frustrate citizens’ attempts to conform their conduct to the law. Robinson, supra at 464, 466-467. In the unlikely event that those who would commit additional felonies in this state laid plans for future crime in reliance on receiving less punishment than the plain language of the habitual offender statutes prescribes, Justice KELLY correctly assumes that such reliance garners little sympathy in our eyes. Post at 82-83 n 11.
V CONCLUSION
Michigan’s habitual offender laws clearly contemplate counting each prior felony conviction separately. The text of those laws does not include a same-incident test. This Court erred by judicially engrafting such a test onto the unambiguous statutory language. Accordingly, we overrule Preuss and Stoudemire.
Defendant was properly sentenced as a third offense habitual offender because he “ha[d] been convicted of... 2 or more felonies ... and committed] a subsequent felony within this state. . . .” MCL 769.11(1). Because defendant was properly sentenced, resentencing is not required on the basis of his claim that he *69 received ineffective assistance of counsel. When an attorney fails to raise “an objection that would have been supported by a decision which subsequently was overruled,” a defendant cannot show that he was prejudiced within the meaning of Strickland. Lockhart v Fretwell, 506 US 364, 366; 113 S Ct 838; 122 L Ed 2d 180 (1993). Under these circumstances, a focus on “mere outcome determination” is insufficient because the result of the proceeding is not fundamentally unfair or unreliable. Id. at 369. “To set aside a conviction or sentence solely because the outcome would have been different but for counsel’s error may grant the defendant a windfall to which the law does not entitle him.” Id. at 369-370, citing United States v Cronic, 466 US 648, 658; 104 S Ct 2039; 80 L Ed 2d 657 (1984).
Accordingly, we affirm defendant’s sentences. We deny leave to appeal with respect to defendant’s remaining issues because he has failed to meet the burden of establishing entitlement to relief under MCR 6.508(D).
Taylor, C.J., and YOUNG and MARKMAN, JJ., concurred with Corrigan, J.

 People v Gardner; unpublished opinion per curiam of the Court of Appeals, issued April 13, 2003 (Docket No. 238186).

 469 Mich 975 (2003).

 People v Gardner, unpublished order of the Court of Appeals, entered July 10, 2006 (Docket No. 267317).

 477 Mich 1096 (2007).

 US Const, Am VI.

 MCL 769.10(1); MCL 769.11(1); MCL 769.12(1).

 See Preuss, supra at 720.

 Michigan has a primarily indeterminate sentencing scheme. For most crimes, courts impose both a minimum and a maximum sentence. The maximum sentence is set by statute on the basis of the sentencing offense. The recommended minimum sentence range is set by statutory guidelines that take into account the circumstances of the particular offense and offender. MCL 769.8; MCL 769.34; People v Harper, 479 Mich 599, 612-613; 739 NW2d 523 (2007).

 MCL 769.10(1); MCL 769.11(1); MCL 769.12(1).

 MCL 769.12(1) establishes enhanced maximum sentences for offenders with three or more prior felony convictions. For ease of reference, we call these offenders “fourth offense habitual offenders.”

 Defendant’s appointed attorneys did not raise the error at sentencing, in a motion for resentencing, or in a motion for remand in the Court of Appeals. Accordingly, defendant properly raises his argument in connection with a claim that he was denied his Sixth Amendment right to effective assistance of counsel. Francisco, supra at 90 n 8. An attorney is ineffective for Sixth Amendment purposes if his performance fell below an objective standard of reasonableness and the defendant was prejudiced as a result. Strickland v Washington, 466 US 668, 688, 692; 104 S Ct 2052; 80 L Ed 2d 674 (1984); People v Pickens, 446 Mich 298, 338; 521 NW2d 797 (1994). Any amount of additional prison time imposed as a result of an attorney’s deficient performance has Sixth Amendment significance. Glover v United States, 531 US 198, 203; 121 S Ct 696; 148 L Ed 2d 604 (2001). Although we accord substantial deference to an attorney’s strategic judgments, we can identify no strategic reason for the failure of defendants’ attorneys here to raise such an obvious point of error that increased the possible minimum prison sentence to which defendant was exposed. Therefore, defendant has properly stated a claim of ineffective assistance of counsel.
For the same reasons, defendant has also properly alleged good cause and actual prejudice, as is necessary to seek relief in a motion for relief from judgment. MCR 6.508(D)(3). A defendant may establish good cause for not raising an argument for relief sooner by showing that his appellate attorney rendered ineffective assistance by failing to raise the issue in a proper post-trial motion or first-tier appeal. People v Reed, 449 Mich 375, 378; 535 NW2d 496 (1995) (opinion by Boyle, J.). Appellate counsel’s failure to “assert all arguable claims” or decision to “winnow out weaker arguments and focus on those more likely to prevail is not evidence of ineffective assistance.” Id. at 391. Here, however, as noted, we *50 cannot identify any excuse for counsel’s failure to raise an obvious error that would have guaranteed resentencing under Francisco. Because the nature and strength of the argument are obvious, the omission is not evidence of a reasonable professional decision to winnow out weaker arguments.

 “[O]nly a few provisions are truly ambiguous and... a diligent application of the rules of interpretation will normally yield a ‘better,’ albeit perhaps imperfect, interpretation of the law. ...” Lansing Mayor v Pub Service Comm, 470 Mich 154, 166; 680 NW2d 840 (2004). A provision is not ambiguous just because “reasonable minds can differ regarding” the meaning of the provision. Id. at 165. “Rather, a provision of the law is ambiguous only if it ‘irreconcilably conflict[s]’ with another provision, or when it is equally susceptible to more than a single meaning.” Id. at 166 (citation omitted). See Klapp v United Ins Group Agency, Inc, 468 Mich 459; 663 NW2d 447 (2003), for an example of truly ambiguous contractual language.

 Justice Archer vigorously dissented in Stoudemire, arguing that the clear statutory language did not impose or permit a same-incident test. Stoudemire, supra at 282, 289 (Archer, J., dissenting). Justice Archer observed that, since 1865, this Court has recognized a fundamental rule of statutory construction: “When the language used in a statute is plain and unambiguous, a common-sense reading of the provision will suffice. No interpretation is necessary.” Id. at 280. Justice Archer dissented in Preuss for the same reasons. Preuss, supra at 743 (Archer, J., concurring in part and dissenting in part).

 The change was consistent throughout the habitual offender laws. For instance, before 1978, MCL 769.12 similarly stated: “A person who after having been 3 times convicted within this state, of felonies or attempts to commit felonies ....” (Emphasis added.)

 Justice Cavanagh offers the puzzling assertions that “[t]here has been no change in the statutory language between 1940 and today that affects its inapplicability to ‘different counts growing out of the same act,’ ” quoting People v Podsiad, 295 Mich 541, 547; 295 NW 257 (1940), and that we “fail[] to identify the changes in the language that would have had this effect.” Post at 73 n 6, 77.

 Justice CAVANAGH incorrectly asserts that Preuss “found nothing in the amended language to compel a change in the longstanding requirement that ‘multiple convictions arising out of a single incident may count as only a single prior conviction under the statute.’ ” Post at 78, quoting Preuss, supra at 720. To the contrary, both Preuss and Stoudemire recognized that the new language “arguably has a different import,” Stoudemire, supra at 278, and “implies that no particular sequence for the first three offenses or convictions was intended.” Preuss, supra at 721. But in each case, the Court avoided the plain meaning of the statutory text in favor of legislative history or on the basis of the Court’s conclusion that the plain language of the text produced an absurd or unjust result. Preuss, supra at 721; Stoudemire, supra at 266, 271, 278.
There is no need to address the merits of the absurd results rule in this opinion. Even assuming the existence of such a rule of interpretation, the result reached here is by no means absurd. A reasonable lawmaker could easily have intended the result reached here. That is, such a lawmaker could easily have intended that courts count each separate felony conviction in determining habitual offender status. There is nothing at all absurd about treating a defendant who has been convicted of three felonies as a third offense habitual offender.

 Indeed, the Preuss Court itself proceeded to examine inconclusive statements from a report of the Commission of Inquny Into Criminal Procedure. Preuss, supra at 721-722, citing State of Michigan, Report of the Commission of Inquiry Into Criminal Procedure (February 8, 1927). The Court noted the commission’s desire to improve former repeat-offender statutes that imposed escalating punishments on the basis of preceding punishments. Preuss, supra at 722-723. The Court concluded that the commission’s goals were to “make it tougher for criminals to avoid apprehension, conviction, and adequate punishment,” to “apply [habitual offender enhancements] to a broader class of criminals than they would have applied to had the prior language about prior sentence been retained,” and to “punishD repeat offenders harshly.” Id. at 724. Significantly, the Court acknowledged that the report “does not contain any express statement concerning the commission’s intent regarding whether a defendant’s prior convictions, offenses, or sentences must occur in any particular sequence in order for him to be subject to fourth-offender penalties.” Id. at 722. Indeed, the new provision in its original 1927 form — which applied when an offender had been “three times convicted” — “literally applied to defendants who had previously been convicted three times before they committed their fourth offense, even if they had not yet been sentenced on any or all of those prior convictions.” Id. at 724. Nonetheless, the Court cited the report, among other authorities, as evidence that the Legislature intended a same-incident test. Id. at 738.

 As perhaps best put by United States Supreme Court Justice Antonin Scalia,
[c]ommittee reports, floor speeches, and even colloquies between Congressmen ... are frail substitutes for bicameral vote upon the text of a law and its presentment to the President.... It is at best dangerous to assume that all the necessary participants in the law-enactment process are acting upon the same unexpressed assumptions. And likewise dangerous to assume that, even with the utmost self-discipline, judges can prevent the implications they *58 see from mirroring the policies they favor. [Thompson v Thompson, 484 US 174, 191-192; 108 S Ct 513; 98 L Ed 2d 512 (1988) (Scalia, J., concurring) (citations omitted).]

 The dissenters would have us engage in a guessing game regarding the meaning of legislative silence. For instance, Justice Cavanagh notes that, before Congress amended 18 USC 924(e)(1) to explicitly include a same-incident test, courts had already begun grafting such a test onto the statute. Post at 76-77. But we rarely know whether a legislature’s intent in amending a statute reflects the intent it originally had when it enacted the statute. Indeed, when a conforming amendment occurs in the wake of a judicial decision, for all we know, the judicial decision may have sparked debate because some legislators perceived the decision as error, but the legislature may ultimately have concluded that the incorrect interpretation nonetheless reflected the better current policy. For these reasons, we decline to second-guess the Legislature when it has spoken unambiguously. It is not this Court’s role to correct'judicially perceived mistakes rooted in the Legislature’s silence or inaction. To the contrary, our separate duty is to engage in self-correction when appropriate. Donajkowski, supra at 260.

 See also Ariz Rev Stat Ann 13-604(S) (“A person who... stands convicted of a serious offense .. . , whether a completed or preparatory-offense, and who has previously been convicted of two or more serious offenses not committed on the same occasion shall be sentenced to life imprisonment. ...”) (emphasis added).

 Also compare Mo Rev Stat 558.016(3) (“A ‘persistent offender’ is one who has pleaded guilty to or has been found guilty of two or more felonies committed at different times" (emphasis added); Okla Stat tit 21, § 51.1(B) (“Felony offenses relied upon shall not have arisen out of the same transaction or occurrence or series of events closely related in time and location." (emphasis added)); 18 USC 924(e)(1) (providing that under what was formerly titled the federal Armed Career Criminal Act, “[i]n the case of a person who violates [18 USC 922(g)] and has three previous convictions by any court referred to in [18 USC 922(g)(1)] for a violent felony or a serious drug offense, or both, committed on occasions different from one another, such person shall be fined under this title and imprisoned not less than fifteen years”) (emphasis added).
These statutes exemplify other legislatures’ use of plain language to establish same-incident tests. We note them in contrast to the text of Michigan’s statutes. We do not “read positive meaning into Michigan legislative silence regarding, for instance, a Missouri statute,” as Justice Cavanagh suggests. Post at 76 n 10. Justice Cavanagh has it backwards. The Legislature has spoken through its plain language, which we seek to uphold. It is defendant and our dissenting colleagues who wish to import a same-incident test where there is none, assuming that the Legislature’s silence in the wake of Stoudemire and Preuss signifies approval of the test those cases added.

 Justice Kelly similarly opines that “the language of the habitual offender statutes is at least equally supportive of the conclusion that the statues are inapplicable to multiple convictions arising from the same act.” Post at 86.

 Justice Kelly cites Justice Cavanagh on this point. Post at 86 n 24.

 Concerning Justice Kelly’s criticisms of the majority for its supposed “disregard” for the doctrine of stare decisis, we reference the concurring statement of Justice Markman in Rowland v Washtenaw Co Rd Comm, 477 Mich 197, 223; 731 NW2d 41 (2007).