# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellant,

v

SAMER SHAMI,

        Defendant-Appellee.

FOR PUBLICATION
December 15, 2016
9:00 a.m.

No. 327065
Wayne Circuit Court
LC No. 14-011190-FH

Before: GADOLA, P.J., and WILDER and METER, JJ.

GADOLA, P.J.

Following an administrative tobacco inspection, defendant was charged with violating the Tobacco Products Tax Act (TPTA), MCL 205.421 *et seq.*, by possessing tobacco products without proper invoices, MCL 205.428(3), manufacturing tobacco products without a license, MCL 205.428(3), and filing three false tobacco tax returns, MCL 205.427(2). The district court bound defendant over on the charges of possessing tobacco products without proper invoices and manufacturing tobacco products without a license following a preliminary examination. Thereafter, the circuit court quashed the bindover and dismissed the two charges. The prosecutor now appeals the circuit court's order as of right. We reverse and remand for reinstatement of the two charges against defendant.

## I. FACTUAL AND PROCEDURAL HISTORY

On May 1, 2013, the Department of Treasury (Treasury) and the Michigan State Police conducted an administrative tobacco inspection of Sam Molasses, LLC (the LLC), a tobacco retail store in Dearborn, Michigan. Alisha Nordman, an employee of Treasury's Tobacco Tax Enforcement Unit, testified at defendant's preliminary examination that between 2007 and 2013, the LLC was licensed as a "secondary wholesaler and an unclassified acquirer of tobacco products" pursuant to MCL 205.423. According to Nordman, defendant's wife, Fadia Shami, is the party named on the LLC's licenses. However, when the tax enforcement team came to the retail store to conduct the inspection, a store clerk called defendant rather than his wife. When defendant arrived, he told Nordman that his wife owned the store "on paper only," that "she did not have any role at the store," and that "he took care of the day to day operations."

Nordman testified that before the inspection, she acquired the LLC's tax returns for the previous four years in order to examine the products sold at the store and to look at the LLC's invoices to compare them with what the company reported on its tax returns. During the

-1-

inspection, defendant produced several invoices from a distributor called El Tahan. Nordman testified that she became concerned when she discovered that the labels on several plastic tubs of tobacco in the LLC's inventory did not match any of the tobacco flavors listed on the invoices. When she questioned defendant about the discrepancy, he told her that he "mix[ed] two or three blends, flavors of tobacco together to come up with a special blend that was subsequently . . . put in these plastic tubs."

Sergeant Stephanie Cleland also participated in the inspection and testified at defendant's preliminary examination. She explained that, during the inspection, the tax enforcement team demanded the LLC's invoices for the last four years, but defendant was only able to produce some of the records. Defendant then contacted El Tahan, which forwarded its remaining invoices two days later. After examining the El Tahan invoices produced by defendant, Cleland determined that the invoices did not comply with the TPTA because they did not list the trade name or brand of the tobacco, did not list the weight of the product, and did not list the tobacco flavors. Cleland also testified that some tobacco in the LLC's inventory did not match the container labels. According to Cleland, when she questioned defendant about the discrepancy, he told her that he repackaged and relabeled the tobacco for resale.

Treasury employee Douglas R. Miller testified that, in order to file an electronic tobacco tax return on behalf of an LLC, a licensee must submit a form designating the persons who have "responsibility or authorization to file the . . . return." Miller explained that the relevant tax forms for the LLC listed Hassan Sharara and Mohamed Hammoud as the persons responsible for filing the LLC's tobacco tax returns during the period at issue.

Treasury employee Kevin Spitzley testified that he received the El Tahan invoices after the inspection. Spitzley determined that the LLC filed a tobacco tax return every month between April 2011 and March 2013, which was required by the TPTA, but there were discrepancies in the reporting for each return. Specifically, Spitzley testified that the LLC reported zero purchases or underreported the actual dollar amount of purchases each month, which resulted in approximately $451,000 in unpaid tobacco taxes during the relevant time period.

At the close of the preliminary examination, defendant's attorney moved to dismiss the charges. Defense counsel argued that defendant could not be held liable for any failure to keep proper invoices because he was not the licensee under the TPTA. He further argued that the court should dismiss the manufacturing charge because (1) blending separate kinds of tobacco did not constitute manufacturing; (2) the prosecutor failed to produce evidence regarding the wholesale price of the tobacco; and (3) any improper manufacturing should be attributed to the LLC, rather than defendant as an individual. Lastly, defense counsel argued that the three charges of filing improper tax returns should be dismissed because the prosecutor failed to present evidence that defendant "had tax specific responsibility or that he file[d] these returns."

The district court denied defendant's motion with respect to the improper keeping of invoices and manufacturing charges, concluding that a prudent examination of the El Tahan invoices should have put defendant on notice that the invoices were inappropriate and that defendant's act of blending separate kinds of tobacco "create[d] a distinctive product or new character" sufficient to constitute manufacturing under the TPTA. Accordingly, the district court bound defendant over on these two charges. However, the court granted defendant's motion

with respect to the improper filing of tax return charges because it concluded that there was no evidence that defendant was authorized or responsible to file tax returns on behalf of the LLC.

Defendant then moved in the circuit court to dismiss the charges. Defendant first argued that the improper keeping of invoices charge should be dismissed because the El Tahan invoices properly identified the trade name or brand of the "generic Water Pipe Tobacco" purchased by the LLC as "Water Pipe Tobacco Class 1." He further argued that mixing or blending different kinds of tobacco did not constitute manufacturing because "manufacturing requires the transformation of 'raw material' into a new and different article."

The prosecutor argued that the district court properly bound defendant over on the improper keeping of invoices charge because, in addition to the El Tahan invoices failing to sufficiently identify the trade name or brand of the tobacco, evidence at the preliminary examination showed that the invoices were not stored at the location where the tobacco was sold. The prosecutor further argued that the district court properly bound defendant over on the improper manufacturing charge because defendant manufactured a tobacco product without a license by blending tobacco to create new flavors and by "canning, labeling, and boxing hookah products under his own label."[1]

Following a hearing, the circuit court concluded that defendant could not be held liable for any improper keeping of invoices because he was not the licensee or the retailer of the tobacco products. The court also determined that "blending two types of hookah tobacco does not constitute manufacturing." Accordingly, the circuit court granted defendant's motion with respect to both charges.

## II. STANDARDS OF REVIEW

We review a district court's decision to bind a defendant over for trial for an abuse of discretion. *People v Crippen*, 242 Mich App 278, 282; 617 NW2d 760 (2000). We review de novo a circuit court's ruling on a motion to quash a bindover. *Id.* "Where there is no abuse of discretion by the district court, a trial court's decision to quash the information should be reversed." *People v Hampton*, 194 Mich App 593, 596; 487 NW2d 843 (1992). This case also presents issues of statutory interpretation, which we review de novo. *People v Gardner*, 482 Mich 41, 46; 753 NW2d 78 (2008).

## III. DISCUSSION

### A. IMPROPER KEEPING OF INVOICES

---

[1] The prosecutor also moved to amend the information to add tax evasion charges against defendant under a theory of aiding and abetting. The circuit court denied the prosecutor's motion after concluding that there was no basis to find that defendant was authorized or responsible to file the LLC's tax returns. The prosecutor does not contest this ruling on appeal.

-3-

The TPTA imposes a tax on the sale and distribution of tobacco products and prescribes penalties and remedies, including criminal sanctions, for violations of the Act. MCL 205.421 *et seq.*; MCL 205.428. Under the Act, "a person shall not purchase, possess, acquire for resale, or sell a tobacco product as a manufacturer, wholesaler, secondary wholesaler, vending machine operator, unclassified acquirer, transportation company, or transporter in this state unless licensed to do so." MCL 205.423(1). Relevant to the invoice issue raised on appeal, MCL 205.426(1) requires a "manufacturer, wholesaler, secondary wholesaler, vending machine operator, transportation company, unclassified acquirer, or retailer" to "keep a complete and accurate record of each tobacco product manufactured, purchased, or otherwise acquired." The record must "include a written statement containing the name and address of both the seller and the purchaser, the date of delivery, the quantity, the trade name or brand, and the price paid for each tobacco product purchased." MCL 205.426(1). MCL 205.426(1) also requires a retailer to keep "a true copy of all purchase orders, invoices, bills of lading, and other written matter substantiating the purchase or acquisition of each tobacco product at the location where the tobacco product is offered for sale for a period of 4 months from the date of purchase or acquisition." "If a tobacco product . . . is found in a place of business or otherwise in the possession of a wholesaler, secondary wholesaler, vending machine operator, unclassified acquirer, transporter, or retailer . . . without proper substantiation by invoices or other records as required by this section, the presumption shall be that the tobacco product is kept in violation of this act." MCL 205.426(6).

On appeal, the prosecutor argues that the circuit court erred by dismissing the improper keeping of invoices charge against defendant because the evidence showed that defendant did not keep the required invoices at the location where the tobacco products were sold. We agree. As stated above, MCL 205.426(1) requires a retailer to keep a true copy of all required invoices "*at the location where the tobacco product is offered for sale for a period of 4 months from the date of purchase or acquisition.*" (Emphasis added.) During the administrative tax inspection, defendant could not produce all of the El Tahan invoices because they were not kept at the retail store where the tobacco was offered for sale. Instead, El Tahan had to send the invoices directly to the police. Several of the invoices sent by El Tahan listed the purchase dates for tobacco products as being less than four months before the May 1, 2013 administrative inspection. Therefore, the evidence showed that defendant failed to keep a true copy of the invoices "at the location where the tobacco product is offered for sale for a period of 4 months from the date of purchase or acquisition." MCL 205.426(1). This evidence of improper recordkeeping sufficiently supported the district court's decision to bind defendant over on the charge of possessing tobacco products without proper invoices in violation of the TPTA.[2]

---

[2] The parties also dispute on appeal whether the El Tahan invoices properly identified the trade name or brand of the tobacco purchased for purposes of MCL 205.426. The TPTA does not define "trade name or brand" and neither the Act nor any relevant authority clarifies the specificity with which an invoice must describe a tobacco product sold. In this case, the El Tahan invoices described the tobacco as "Water pipe tobacco—Class I." It is unclear whether this description adequately identifies the trade name or brand of tobacco purchased by the LLC for purposes of the TPTA. However, because the El Tahan invoices were not kept at the location

## B. INDIVIDUAL LIABILITY

Next, the prosecutor argues that the circuit court erred by dismissing the improper keeping of invoices charge against defendant because, although he was not the licensee, he could be held criminally liable for improper recordkeeping because he managed the day-to-day operations of the LLC's retail store. We agree. Defendant was criminally charged under MCL 205.428(3), which states that "[a] person who possesses, acquires, transports, or offers for sale contrary to this act . . . tobacco products other than cigarettes with an aggregate wholesale price of $250.00 or more . . . is guilty of a felony . . . ." MCL 205.422(o) defines a "person" as "an individual, partnership, fiduciary, association, limited liability company, corporation, or other legal entity." Therefore, under the plain language of the TPTA, an individual can be criminally liable for violations of the Act.

Defendant's underlying violation of the TPTA was based on MCL 205.426(1), which requires a tobacco retailer "[to] keep a complete and accurate record of each tobacco product manufactured, purchased, or otherwise acquired." As discussed above, MCL 205.426(1) further requires "a retailer" to "keep as part of the records a true copy of all purchase orders, invoices, bills of lading, and other written matter substantiating the purchase or acquisition of each tobacco product at the location where the tobacco product is offered for sale for a period of 4 months from the date of purchase or acquisition."

The TPTA defines "retailer" as "a person other than a transportation company who operates a place of business for the purpose of making sales of a tobacco product at retail." MCL 205.422(q). This Court recently held that "[w]hen MCL 205.426(1) and MCL 205.422(q) are read together and in the proper context, it is evident that the Legislature intended the term 'retailer' to . . . refer to a person who directs or manages the business—to someone who has control over the business' day-to-day operations." *People v Assy*, ___ Mich App ___, ___; ___ NW2d ___ (2016) (Docket No. 326274); slip op at 4 (citation omitted). The Court then concluded that "[i]f a person or entity has control over the day-to-day operations of a 'place of business for the purpose of making sales of a tobacco product at retail,' that person is a retailer notwithstanding that he or she does not own the place of business." *Id.* at ___; slip op at 5, citing MCL 205.422(q). Accordingly, a person who manages the day-to-day operations of a tobacco retail store is obligated to comply with the recordkeeping requirements of MCL 205.426(1) or "risk being charged with the possession of tobacco products in contravention of the Tobacco Act." *Assy*, ___ Mich App at ___; slip op at 4.

In this case, it is undisputed that the LLC was a place of business for selling tobacco products at retail. During the administrative tobacco inspection, defendant told members of the tax enforcement team that his wife owned the store, but she "did not have any role at the store" and he "took care of the day to day operations." Because defendant admitted that he directed and managed the day-to-day operations of the retail store, he is properly classified as a "retailer" for purposes of the TPTA and was therefore obligated to comply with the recordkeeping requirements of MCL 205.426(1). See *Assy*, ___ Mich App at ___; slip op at 4. MCL

where the tobacco was offered for sale, we need not resolve this issue to nonetheless conclude that the evidence was sufficient to allow the district court to bind defendant over on the charge.

205.428(3) imposed criminal liability when he violated that obligation. Therefore, the district court did not abuse its discretion by binding defendant over on the improper keeping of invoices charge, and the circuit court erred by quashing the bindover and dismissing the charge.

## C. MANUFACTURING UNDER THE TPTA

Finally, the prosecutor argues that the circuit court erred by dismissing the manufacturing charge against defendant because he improperly possessed tobacco as a manufacturer without a license. We agree. MCL 205.423(1) states that a person "shall not purchase, possess, acquire for resale, or sell a tobacco product as a manufacturer . . . unless licensed to do so." MCL 205.428(3) imposes criminal liability for violating the Act and states that a person is guilty of a felony if he or she "possesses, acquires, transports, or offers for sale . . . tobacco products other than cigarettes with an aggregate wholesale price of $250.00 or more" in a manner contrary to the TPTA. The TPTA defines "manufacturer" as any of the following:

> (*i*) A person who manufactures or produces a tobacco product.

> (*ii*) A person who operates or who permits any other person to operate a cigarette making machine in this state for the purpose of producing, filling, rolling, dispensing, or otherwise generating cigarettes. [MCL 205.422(m).]

The TPTA does not define "manufactures or produces" for purposes of MCL 205.422(m)(*i*), and there is no binding authority directly on point, so the precise meaning of these terms is an issue of first impression for this Court.

When interpreting statutory language, courts must give "plain meaning to the words actually used" in the statute. *People v Williams*, 491 Mich 164, 175; 814 NW2d 270 (2012). If the statute defines a term, the statutory definition controls. *People v Schultz*, 246 Mich App 695, 703; 635 NW2d 491 (2001). However, when a statute fails to define a term, like the terms "manufactures" and "produces" in this case, we presume "that the Legislature intended for the words to have their ordinary meaning." *People v Hardy*, 494 Mich 430, 440; 835 NW2d 340 (2013). Courts may consult dictionary definitions to ascertain the plain and ordinary meaning of undefined statutory terms. *People v Denio*, 454 Mich 691, 699; 564 NW2d 13 (1997).

*Merriam-Webster's Collegiate Dictionary* (11th ed) defines the verb form of "manufacture" as "to make into a product suitable for use" and "to make from raw materials by hand or by machinery." It further defines the verb form of "produce" as "to make available for public exhibition or dissemination," "to cause to have existence or to happen : BRING ABOUT . . . to give being, form, or shape to : MAKE; *esp* : MANUFACTURE" and "to compose, create, or bring out by . . . physical effort." *Id.* In light of these definitions, manufacturing for purposes of the TPTA simply requires a change from the original state of an object or material to a state that makes it more suitable for its intended use. The context of MCL 205.422(m)(*i*) in the TPTA indicates that a mere change in the form or delivery method of tobacco is sufficient to constitute manufacturing or producing under the Act. As the prosecutor points out on appeal, the definition of "manufacturer" in MCL 205.422(m)(*ii*) includes someone who simply rolls cigarettes from loose tobacco. Therefore, the statutory context suggests that any change in the form or delivery

method of tobacco, rather than a specific type or method of change, constitutes manufacturing under the TPTA.

Applying the facts in this case, defendant manufactured or produced tobacco for purposes of the TPTA when he repackaged and mixed different flavors of tobacco because he changed, however slightly, the form and delivery method of the tobacco. Specifically, defendant admitted to Nordman during the inspection that he "mix[ed] two or three blends, flavors of tobacco together to come up with a special blend . . . ." He also explained to Cleland that he repackaged the tobacco in tins and labeled it "360," his own label, before offering the tobacco for sale. These activities amounted to manufacturing a new product that defendant held out for sale as defendant's own brand. Accordingly, the district court did not abuse its discretion by binding defendant over on the improper manufacturing charge, and the circuit court erred by quashing the bindover and dismissing the charge.

Reversed and remanded for further proceedings consistent with this opinion.

/s/ Michael F. Gadola
/s/ Kurtis T. Wilder
/s/ Patrick M. Meter