*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

KIM ANDERSON,

Defendant-Appellant.

FOR PUBLICATION
March 10, 2020
9:00 a.m.

No. 345601
Kent Circuit Court
LC No. 17-010335-FC

Before: MURRAY, C.J., and METER and K. F. KELLY, JJ.

METER, J.

Defendant appeals as of right his jury-trial convictions for first-degree criminal sexual conduct (CSC-I), MCL 750.520b; kidnapping, MCL 750.349; unlawful imprisonment, MCL 750.349b; unlawful driving away of a vehicle (unlawful driving), MCL 750.413; and assault with a dangerous weapon (felonious assault), MCL 750.82. Among other issues, defendant argues that the prosecution did not present sufficient evidence of penetration to convict him of CSC-I. We conclude, as have many panels before us, that defendant sexually penetrated the victim under MCL 750.520a(r) by inserting his penis into the crease of her buttocks. Accordingly, we conclude that sufficient evidence supported defendant's CSC-I conviction. Finding no merit to the remainder of defendant's claims of error, we affirm defendant's convictions and sentences.

## I. BACKGROUND

Defendant's convictions result from his assault of the victim in her home. The victim and defendant were friends before the assault, but were not romantically or sexually involved. After spending the morning together on the day in question, defendant asked the victim for a hug. She obliged but, when defendant held her for longer than she wished, she pushed him away. At that point, defendant told the victim that he loved her. The victim, however, informed defendant that she did not have any romantic feelings for him. According to the victim, she then noticed that defendant had a knife in his hands, and she tried to take it from him. The two struggled and eventually ended up on the floor, where defendant sat on the victim's back, "scraping" the knife across her back. Defendant hit the victim on her face and back, cut off the victim's belt with the

-1-

knife, and told her to take off her pants. The victim complied and, as she was standing bent over facing the ground, defendant placed his penis in the crease of her buttocks and ejaculated.

According to the victim, defendant then told her to dress and get into the closet in the dining area. The victim complied and defendant placed a knife in the crease of the door in a manner which prevented the victim from opening the closet door. Defendant paced back and forth, talking about how the victim had humiliated him on numerous occasions. Defendant stated that he wanted the victim to feel his pain and asked her if she wanted to die. Eventually defendant indicated that he wanted money from the victim and the victim told him that she had collected change in a water jug. Defendant then allowed the victim to exit the closet and the two went upstairs to a spare bedroom. Defendant instructed the victim to lie on her stomach and, after she complied, defendant tied up the victim with speaker wire and masking tape and placed tape over her mouth. Defendant instructed the victim to enter the closet and, after she did so, wrapped a wire around her neck and attached it to the clothes bar. Defendant took the victim's change jug, as well as a few other valuables, and left in the victim's car. Defendant abandoned the car at a friend's home, but was arrested a couple days later.

Defendant was convicted of the aforementioned crimes after a four-day jury trial. The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to prison terms of 50 to 75 years for his CSC-I and kidnapping convictions; 19 to 60 years for his unlawful-imprisonment conviction; 3 to 30 years for his unlawful-driving conviction; and 4 to 15 years for his felonious-assault conviction. This appeal followed.

## II. ANALYSIS

### A. SUFFICIENCY OF THE EVIDENCE

On appeal, defendant first challenges the sufficiency of the evidence underlying his CSC-I and kidnapping convictions. We review de novo challenges to the sufficiency of the evidence. *People v Solloway*, 316 Mich App 174, 180; 891 NW2d 255 (2016). On appeal, we must determine whether, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could find that the prosecution proved each essential element of the crime beyond a reasonable doubt. *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012). A trier of fact may consider circumstantial evidence and all reasonable inferences the evidence creates. *Solloway*, 316 Mich App at 180-181. "It is for the trier of fact, not the appellate court, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences." *People v Flick*, 487 Mich 1, 24-25; 790 NW2d 295 (2010) (internal citation and quotation marks omitted). We review de novo issues of statutory interpretation. *People v Gardner*, 482 Mich 41, 46; 753 NW2d 78 (2008).

### 1. CSC-I

In this case, defendant was charged under alternate theories of CSC-I pursuant to MCL 750.520b(1)(c) and (f), which provide in pertinent part:

> (1) A person is guilty of criminal sexual conduct in the first degree if he or she engages in sexual penetration with another person and if any of the following circumstances exists:

* * *

(c) Sexual penetration occurs under circumstances involving the commission of any other felony.

* * *

(f) The actor causes personal injury to the victim and force or coercion is used to accomplish sexual penetration. Force or coercion includes, but is not limited to, any of the following circumstances:

(*i*) When the actor overcomes the victim through the actual application of physical force or physical violence.

MCL 750.520a(r) defines "sexual penetration" as "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of another person's body, but emission of semen is not required."

Defendant argues that he could not have been convicted under either theory because the prosecution presented no evidence of sexual penetration. In making this argument, defendant points to the victim's initial statements to police officers and a sexual assault nurse examiner that defendant did not penetrate her, as well as the victim's testimony at trial that defendant ejaculated quickly after she took her clothes off. In making the latter argument, defendant appears to acknowledge that DNA evidence was presented at trial which tended to show defendant's DNA in the area of the victim's buttocks; however, defendant avers that the "rational inference" from this evidence and the victim's testimony "is that semen dripped down in the anal area or that it migrated from her clothing to that area after she went upstairs." Regarding these arguments, we need only note that the victim testified that defendant placed his penis between the fold of her buttocks before he ejaculated. The victim's previous statements were presented to the jury, which made a credibility determination in the victim's favor. It is the jury's role to determine credibility and we will not usurp that role on appeal.[1]

The victim's testimony, however, presents us with a different question: is intrusion into the crease of the buttocks, but not into the anal cavity itself, sufficient to satisfy the penetration element of CSC-I? We conclude that it is. There is no binding precedent in this jurisdiction answering the question; however, several panels of this Court have concluded that similar intrusions satisfy the penetration element of CSC-I. For instance, in *People v Motley*, unpublished per curiam opinion of the Court of Appeals, issued May 23, 2006 (Docket No. 258281), p 3, a panel of this Court reasoned that the " 'anal opening' includes the crease of the buttocks immediately next to the anus

---

[1] Defendant argues in his appellate brief that the victim's testimony was a series of agreements with the prosecutor's questions. The jury, however, heard the victim's testimony and was privy to her previous statements to officers and the nurse examiner. Again, credibility determinations are reserved for the factfinder. To the extent that defendant has attempted to argue that the prosecutor's questioning was improper, we decline to address this issue because it was not properly raised in the statement of questions presented. MCR 7.212(C)(5).

itself." In doing so, the *Motley* panel referenced *People v Peterson*, 450 Mich 349, 354; 547 NW2d 857 (1995), noting that the "facts of [that] case distinguish anal canal from anal opening." *Motley*, unpub op at 3.

Similarly, in *People v Person*, unpublished per curiam opinion of the Court of Appeals, issued June 7, 2002 (Docket No. 232243), p 2, the panel concluded that "the act of placing one's penis in between another's buttocks in the area of the anal opening is indeed an act of sufficient physical invasiveness to constitute 'sexual penetration.' " The *Person* panel reasoned by analogy to *People v Legg*, 197 Mich App 131, 133; 494 NW2d 797 (1992), in which this Court concluded that the "genital openings" of a female victim are not limited to the vagina, itself, but also include the labia. *Person*, unpub op at 2. Indeed, our unpublished cases leave little doubt that this Court interprets the term "anal opening" in MCL 750.520a(r) broadly to include both the anal canal and the crease of the buttocks. See *People v Li-Hua Wei*, unpublished per curiam opinion of the Court of Appeals, issued October 18, 2013 (Docket No. 308353), p 2; *People v Novak*, unpublished per curiam opinion of the Court of Appeals, issued January 26, 2010 (Docket No. 284838), p 4.[2]

Unpublished cases, however, are not precedentially binding. MCR 7.215(C)(1). Thus, despite several cases touching on the issue, this Court has not provided definitive guidance to trial courts applying MCL 750.520a(r) in these circumstances. Therefore, to the extent that any question exists regarding whether an intrusion need enter the anal canal to constitute sexual penetration, we intend to resolve it in precedential fashion. Drawing upon the analysis of several of this court's panels in recent years, we conclude—now in a published decision—that the Legislature intended the term "anal opening" to be read broadly to include both the anal canal and the crease of the buttocks or, in laymen's terms, as the victim explained, the void between the "butt cheeks." In coming to this conclusion, we need not restate at length what has already been discussed previously. Rather, we highlight two considerations.

First, this Court has already concluded that the "genital opening" of a female includes the labia. We see no reason why the Legislature would define "genital opening" broadly, but restrict "anal opening" to the anal canal. Second, the defining difference between a sexual penetration and sexual contact is the intrusion into the victim's body, rather than the unwanted touching of sensitive areas of the body. The statute broadly prohibits sexual intrusions of all types, regardless of the cavity entered. In this sense, the statute protects a person's bodily integrity and there can be no question that defendant's conduct in this case sufficiently intruded upon the victim's bodily integrity to qualify it in the same class as other recognized sexual penetrations.

Defendant does not challenge the other elements underlying his sexual-assault conviction. Accordingly, we affirm defendant's conviction of CSC-I.

---

[2] Judge GLEICHER dissented in *Novak*, concluding that the evidence was insufficient to convict defendant of CSC-I where, at most, the evidence showed that defendant penetrated the victim's buttocks but not her anus. *Novak* (GLEICHER, J., dissenting), unpub op at 8-10.

-4-

## 2. KIDNAPPING

Next, defendant argues that the prosecutor presented insufficient evidence for a rational jury to find him guilty of kidnapping. As relevant here, a person commits the crime of kidnapping if he "knowingly restrains another person with the intent" to commit a criminal sexual offense. MCL 750.349(1)(c).

> " '[R]estrain' means to restrict a person's movements or to confine the person so as to interfere with that person's liberty without that person's consent or without legal authority. The restraint does not have to exist for any particular length of time and may be related or incidental to the commission of other criminal acts." [MCL 750.349(2).]

Defendant argues that he cannot be convicted of kidnapping because he did not restrain the victim with the intent to commit a sexual assault. We disagree. Defendant's argument focuses on his restraint of the victim in the downstairs and upstairs closets. Defendant makes much of the fact that any sexual assault did not occur while or after the victim was so confined. Yet, the closet confinements were not the restraint that warranted defendant's kidnapping conviction; rather, the restraint underlying defendant's kidnapping conviction was his confinement of the victim preceding the sexual assault.

Viewing the evidence in the light most favorable to the prosecutor—and crediting the victim's testimony accordingly—the record shows that defendant sat on the victim while scraping a knife over her back. He then used that knife to cut off the victim's belt, before he instructed her to remove her clothes and committed the sexual assault. Although the closet confinements were of longer duration, restraint for the purposes of the kidnapping statute need not be for any specific period of time. By using his own body weight and the presence of the knife to restrict the victim, defendant restrained the victim within the purview of the kidnapping statute. That this restraint was accomplished with the intent to commit a sexual assault is evidenced by the fact that defendant removed the victim's belt while she was constrained and committed the sexual act immediately after the confinement, while the victim was still under the strain of the prior restraint. Accordingly, the prosecutor presented sufficient evidence for a rational jury to convict defendant of kidnapping.

## B. DNA EVIDENCE[3]

Defendant raises two arguments with regard to the trial court's admission of evidence of a DNA analysis performed on anal and perianal swabs from the victim. At trial, Erica Castor, an expert in DNA analysis employed by the Michigan State Police in Northville, testified that the Michigan State Police laboratory in Grand Rapids received the victim's sexual-assault kit in October 2017, at which point it was itemized. Michelle Schmitt, a DNA-analysis expert with the Michigan State Police laboratory in Grand Rapids, testified that the actual date the Grand Rapids laboratory received the kit was November 13, 2017. According to Castor, the Northville laboratory received the kit on December 6, 2017. In January 2018, Castor took samples (cuttings) of swabs

---

[3] This issue and the remaining issues discussed in this opinion were raised by defendant in a brief filed pursuant to Michigan Supreme Court Administrative Order 2004-6, Standard 4.

in the victim's sexual assault kit to determine whether any tested positive for the presence of male DNA. Castor generated a report of her work on January 29, 2018. The anal and perianal cuttings contained the highest amount of DNA and she sent a sample of those cuttings for additional DNA testing back at the Grand Rapids laboratory.

Schmitt testified that she began her testing on the cuttings in March 2018 and prepared her report the next month. Schmitt explained that she analyzed two different "fractions" from the anal and perianal swab. Fraction one contained skin cells or cells from the body, while Schmitt attempted to isolate possible sperm cells for fraction two. DNA analysis on the first fraction revealed likely skin cells with a correlation to the DNA of the victim, defendant, and one unknown person. Regarding the second fraction, Schmitt testified that, although no one looked at the cells under a microscope, the differential extraction technique employed was intended to isolate sperm cells. Schmitt stated that she could not "definitely" say that cells were sperm cells but that the technique was used to try to isolate sperm cells. The results of the analysis of the second fraction revealed cells with a strong correlation to defendant's DNA.

On appeal, defendant first argues that the trial court erred by admitting Schmitt's report into evidence because the reliability of the report was doubtful, given that Schmitt's report predates Castor's report, despite the fact that Schmitt's report used the cuttings Castor created. We review this unpreserved argument for plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). The record clearly shows that Castor took the cuttings and created her report before Schmitt. Defendant has provided this Court with no evidence which would suggest that the DNA samples were tampered with or that the report was otherwise suspect. Defendant's argument is therefore without merit.

Next, defendant argues that the prosecutor misled the jury during his opening and closing arguments by stating that the defendant's semen was found on the victim. We review this unpreserved allegation of prosecutorial misconduct for plain error affecting defendant's substantial rights. *Id*. "[T]he test for prosecutorial misconduct is whether a defendant was denied a fair and impartial trial." *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). "Issues of prosecutorial misconduct are decided case by case, and this Court must examine the entire record and evaluate a prosecutor's remarks in context." *Id*. at 64.

The record in this case indicates that, although Schmitt could not say definitively that the second-fraction cells were sperm cells, the differential analysis employed attempted to isolate sperm cells. Moreover, the results of her analysis showed high correlation between the DNA on the second-fraction cells and defendant's DNA. These results imply that defendant contributed semen to the victim's anal area. Accordingly, we are unable to conclude that the prosecutor misled the jury and, in any event, the jury was properly instructed that the attorney's arguments were not evidence. See *People v Watson*, 245 Mich App 572, 588; 629 NW2d 411 (2001) ("Although a prosecutor may not argue facts not in evidence or mischaracterize the evidence presented, the prosecutor may argue reasonable inferences from the evidence."); *People v Mahone*, 294 Mich App 208, 212; 816 NW2d 436 (2011) ("Jurors are presumed to follow their instructions, and it is presumed that instructions cure most errors.").

## C. POLYGRAPH EXAMINATION

Next, defendant argues that he is entitled to a new trial because his request to take a polygraph examination was improperly denied. MCL 776.21(5) provides that "[a] defendant who allegedly has committed a crime under [MCL 750.520b] shall be given a polygraph examination or lie detector test if the defendant requests it." A defendant can request such an examination until he or she is convicted of the offense. *People v Phillips*, 469 Mich 390, 396; 666 NW2d 657 (2003). In this case, defendant was charged with CSC-I pursuant to MCL 750.520b. Therefore, he would be entitled to a polygraph examination if he requested it. On appeal, however, defendant has provided no evidence to support his assertion that he requested an examination. Accordingly, defendant's argument is without merit.

## D. FOURTH HABITUAL ENHANCEMENT

Finally, defendant argues that the trial court erred in sentencing him as a fourth-offense habitual offender, MCL 769.12. We review de novo issues involving the interpretation of the legislative sentencing guidelines. *People v* Ambrose, 317 Mich App 556, 560; 895 NW2d 198 (2016). The trial court's "factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence," but application of those facts to the statute is a question of law reviewed de novo. *Id*. (internal citation and quotation marks omitted).

MCL 769.12(1)(a) provides:

> (1) If a person has been convicted of any combination of 3 or more felonies or attempts to commit felonies, whether the convictions occurred in this state or would have been for felonies or attempts to commit felonies in this state if obtained in this state, and that person commits a subsequent felony within this state, the person shall be punished upon conviction of the subsequent felony and sentencing under section 13 of this chapter as follows:

> (a) If the subsequent felony is a serious crime or a conspiracy to commit a serious crime, and 1 or more of the prior felony convictions are listed prior felonies, the court shall sentence the person to imprisonment for not less than 25 years. Not more than 1 conviction arising out of the same transaction shall be considered a prior felony conviction for the purposes of this subsection only.

Defendant's arguments regarding MCL 769.12 are unclear. Defendant appears to argue that he should have been subject to a 25-year minimum sentence instead of being sentenced as a fourth-habitual offender. The 25-year minimum, however, is a sentence applied to a fourth-habitual offender, not a separate sentencing scheme. Indeed, defendant was sentenced as a fourth-habitual offender consistent with the 25-year minimum set forth in MCL 768.12(1)(a). Defendant argues that he was not noticed of the fourth-habitual enhancement, but notice was contained in both the original and amended informations. Accordingly, defendant has not shown any entitlement to relief from his enhanced sentence. Because defendant has not shown that the habitual enhancement was improper, we also find without merit his argument that his counsel was constitutionally ineffective for failing to challenge the enhancement. *People v Sabin (On Second Remand)*, 242 Mich App 656, 660; 620 NW2d 19 (2000).

Affirmed.

/s/ Christopher M. Murray
/s/ Patrick M. Meter
/s/ Kirsten Frank Kelly