*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

MICHAEL PAUL PARNELL,

        Defendant-Appellant.

UNPUBLISHED
November 21, 2023

No. 357004
Muskegon Circuit Court
LC No. 02-047101-FH

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

MICHAEL PAUL PARNELL,

        Defendant-Appellant.

No. 357005
Muskegon Circuit Court
LC No. 02-048012-FH

ON REMAND

Before: MURRAY, P.J., and O'BRIEN and REDFORD, JJ.

PER CURIAM.

These consolidated cases return to this Court following a remand from our Supreme Court. In Docket No. 357004, defendant was convicted of fourth-degree criminal sexual conduct (CSC-IV) (sexual contact by force or coercion), resisting and obstructing a police officer, and carrying a concealed weapon (CCW). He was sentenced as a fourth-offense habitual offender to prison terms of 10 to 15 years for CSC-IV, 2 to 15 years for resisting and obstructing, and life with the possibility of parole for CCW. In Docket No. 357005, defendant was convicted of retaliation against a witness, and sentenced to life imprisonment with the possibility of parole. On appeal to this Court, defendant argued that his sentences violated the principle of proportionality. This Court rejected that argument, reasoning that the principle of proportionality did not apply to the

sentencing of habitual offenders. *People v Parnell*, unpublished per curiam opinion, issued September 15, 2022 (Docket Nos. 357004 and 357005), pp 9-10. Our Supreme Court vacated that portion of the opinion and remanded to this Court "for consideration of the defendant's challenge to the proportionality of his departure sentences under the standard set forth in *People v Steanhouse*, 500 Mich 453, 476; 902 NW2d 327 (2017)." *People v Parnell*, ___ Mich ___; 994 NW2d 508 (2023). Doing so, we again affirm defendant's sentences.

## I. BACKGROUND

This Court previously explained the factual background of defendant's convictions on appeal as follows:

> Defendant's convictions in Docket No. 357004 arise from a sexual assault that occurred on February 13, 2002, in Muskegon, Michigan. Defendant, who was riding a bicycle, grabbed and squeezed the buttocks of the victim, KF, as she walked toward her car. KF called 911 and provided a description of defendant and his bike to the dispatcher. Following a foot chase and struggle, defendant was arrested and handcuffed. A subsequent search revealed that defendant was carrying a knife. A police officer also found that defendant had pantyhose with the legs cut off and tied together. The officer testified that he had seen pantyhose in that condition used as a mask. Following a two-day trial, the jury found defendant guilty of CSC-IV, resisting a police officer, and CCW.
>
> Defendant's [witness-retaliation] conviction in Docket No. 357005 arises from a previous armed-robbery conviction. On February 4, 2002, defendant held 12-year-old CB at knifepoint in a Kmart bathroom stall and ordered her to remove her underwear. Defendant unzipped his pants, placed his groin onto CB's groin, and stuck his tongue down her throat. When he left, he took CB's underwear and threatened to kill her if she screamed or told anyone what had happened. CB testified about the incident at a trial held in June 2002, after which defendant was convicted of armed robbery, MCL 750.529, and sentenced as a fourth-offense habitual offender to 45 to 100 years' imprisonment. Defendant appealed that conviction, and while his appeal was pending, CB received a letter in the mail at her home where she lived with her grandmother. The letter, which was addressed to CB and signed by defendant, contained graphic threats to rape, torture, and murder CB unless she recanted her testimony against defendant. The letter also contained graphic hand-drawn pictures. Three of defendant's fingerprints were discovered on the letter. On the basis of this letter, a jury convicted defendant of [retaliating against a witness]. [*Parnell*, unpub op at 2.]

Defendant was sentenced for his convictions in Docket Nos. 357004 and 357005 at a single sentencing hearing. For defendant's CCW convictions, the guidelines were scored at 19 to 76 months, and the guidelines for his witness-retaliation conviction was scored at 43 to 152 months. When sentencing defendant, the trial court departed from the guidelines range for both convictions, explaining:

I do not believe the guidelines give sufficient weight to the nature of your prior record and the nature of these offenses, and I feel that the totality and cumulative effect of the following factors constitute substantial and compelling reasons for an upward departure.

I note you have prior juvenile adjudications for second-degree criminal sexual conduct where you grabbed a neighborhood girl while she was outside; second-degree criminal sexual conduct in which you ran up to a Department of Social-Service worker in a parking lot and grabbed her breast. While you were on juvenile probation, you had probation violation convictions for two counts of indecent behavior where . . . apparently you grabbed a woman from behind and said you want some blank and used the slang term for the female sex organs. You also entered a woman's shower at the YMCA and observed a woman taking a shower.

As an adult, you have convictions for fourth-degree criminal sexual conduct in which you grabbed a woman from behind and grabbed her pubic area. You have a conviction for assault with a dangerous weapon and carrying a concealed weapon which was done 3-l/2 months after your discharge from prison on the fourth-degree criminal sexual conduct conviction where you served the maximum. In that case, a woman was in a toilet stall in a bathroom, a women's bathroom, and as she was leaving, you put the blade of the knife to her throat, told her you wanted to kill her.

After you served the maximum on the assault with a dangerous weapon and carrying a concealed weapon convictions—that is, the maximum sentence in prison—on the same day you were released, you committed an armed robbery in the K-Mart bathroom in which you went in the women's bathroom, put a knife in the face of a 13-year-old girl [CB], said if she screamed you would kill her, forced the girl to take off her pants and underwear, you unzipped your pants, put your groin to her groin, stuck your tongue in her mouth and down her throat, stole her underwear and threatened to kill her if she screamed or if she told.

I note in your previous incarcerations, you had two major misconducts for threatening behavior. On your current incarceration, you have one major misconduct for threatening behavior. In the instant conviction for fourth-degree criminal sexual conduct, you grabbed the buttock of a 19-year-o1d woman while she was walking on a public street. Although you did not display a knife, you were carrying a knife.

As to the conviction here of retaliating against a witness, this was a threat to the witness in the armed robbery case which occurred while you were in prison. I won't repeat the language of the letter. That's on the record from the trial, but the threat was done in an unusually perverse, vile, and foul language, as well as unusually perverse, vile, and foul imagery as to what you were going to do to her involving her rape, her death, and her torture of this 13-year-old witness.

The total of all this, Mr. Parnell, is that you're simply out of control, and I believe there are substantial and compelling reasons to exceed the guidelines, and

I will exceed the guidelines. For those reasons, I believe that deterrence, disciplining the offender, and protection of the public are by far the more important variables in sentencing.

The court restated its reasoning in a written departure evaluation form:

> I sentenced above the guidelines because I did not believe the guidelines gave sufficient weight to the totality of the following factors: (1) juvenile adjudications for two separate offenses of second degree criminal sexual conduct, which involved assaulting two different women in public places; (2) two juvenile court probation violation charges involving indecent behavior and preying on women; (3) and adult 4th degree criminal sexual conduct conviction involving a woman in a public area; (4) after serving the maximum sentence on the latter charge[,] defendant was out of prison for 3½ months and was convicted of assault with a dangerous weapon and carrying a concealed weapon involving assaulting and threatening to kill a woman in a women's bathroom after she came out of the toilet stall; (5) on the day defendant was released from prison after serving the maximum on the latter two offenses, defendant committed an armed robbery of a 13-year old girl in the women's restroom of K-mart in which he held a knife to her face, threatened to kill her, forced her to disrobe from the waist down, and stole her underpants; (6) while in prison on the armed robbery charge, defendant sent a letter to the 13-year old victim in which he threatened to kill her, rape her, and torture her, using very graphic imagery and foul, perverse language in the letter. Thus, I felt that the maximum sentence possible should be imposed on the instant convictions of retaliation against a witness, 4th felony offense; carrying a concealed weapon, 4th felony offense, and 4th degree CSC, 4th felony offense. I also weighed that defendant had two major misconducts for threatening behavior in a previous prison sentence and one major misconducts for threatening behavior in his present prison sentence.

## II. STANDARD OF REVIEW

"This Court reviews the proportionality of a trial court's sentence for an abuse of discretion." *People v Lydic*, 335 Mich App 486, 500; 967 NW2d 847 (2021) (quotation marks and citation omitted). "A given sentence constitutes an abuse of discretion if that sentence violates the principle of proportionality . . . ." *People v Lowrey*, 258 Mich App 167, 172; 673 NW2d 107 (2003).

## III. DISCUSSION

The principle of proportionality "requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender." *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1 (1990). "The concept of proportionality is central to the Eighth Amendment," *Graham v Florida*, 560 US 48, 59; 130 S Ct 2011; 176 L Ed 2d 825 (2010), "which guarantees individuals the right not to be subjected to excessive sanctions," *Roper v Simmons*, 543 US 551, 560; 125 S Ct 1183; 161 L Ed 2d 1 (2005). "That right . . . 'flows

from the basic "precept of justice that punishment for crime should be graduated and proportioned" ' to both the offender and the offense." *Miller v Alabama*, 567 US 460, 469; 132 S Ct 2455; 183 L Ed 2d 407 (2012), quoting *Roper*, 543 US at 560, quoting *Weems v United States*, 217 US 349, 367; 30 S Ct 544; 54 L Ed 793 (1910). The sentencing guidelines establish a range of possible minimum sentences as "a function of the seriousness of the crime and of the defendant's criminal history." *People v Babcock*, 469 Mich 247, 264; 666 NW2d 231 (2003).

*Milbourn* observed that "[j]ust as the [judicial sentencing] guidelines may not be a perfect embodiment of the principle of proportionality, so too may a sentence within the guidelines be disproportionately severe or lenient." *Milbourn*, 435 Mich at 611. Accordingly, a court imposing a sentence and an appellate court reviewing a sentence must be mindful that "the key test is whether the sentence is proportionate to the seriousness of the matter, not whether it departs from or adheres to the guidelines' recommended range." *Id*. Accord *Steanhouse*, 500 Mich at 472. Nonetheless, because the extent of possible sentences for the CCW and retaliation-against-a-witness convictions is sizeable, considering the guidelines is a useful frame of reference when considering whether a sentence comports with the principle of proportionality. *Dixon-Bey*, 321 Mich App at 531.

In his brief on appeal, defendant acknowledged that the trial court advanced reasons for departing from the sentencing guidelines, but contended that the court never addressed why the extent of the departure was proportionate to his circumstances or the circumstances surrounding the offenses. While defendant is correct that the trial court did not draw any distinction in its reasoning between the need to depart and the extent of the departure, both subjects are inherent in the court's oral and written explanations.

When defendant was originally sentenced, the trial court was required to employ the substantial-and-compelling-reason test of the then-current version of MCL 769.34(3).[1] In the ensuing years, our Supreme Court in *Lockridge* struck down that test and replaced it with the principle-of-proportionality standard articulated in *Milbourn*. *Lockridge*, 498 Mich at 391. Following *Lockridge*, appellate courts reviewing sentencing like defendant's—that is, those in which the trial court found substantial and compelling reasons to depart from the sentencing guidelines—"engage[] in reasonableness review for an abuse of discretion informed by the 'principle of proportionality' standard." *Steanhouse*, 500 Mich at 476.

"[T]he ultimate authority to provide for penalties for criminal offenses is constitutionally vested in the Legislature." *People v Hedgwood*, 465 Mich 432, 436; 636 NW2d 127 (2001). The Legislature's exercise of that authority is effectuated in various provisions throughout statutory law, notably in the Penal Code[2] and the Code of Criminal Procedure,[3] including the sentencing guidelines. The principle of proportionality animates the Legislature's enactment of mandatory

---

[1] "A court may depart from the appropriate sentence range established under the sentencing guidelines set forth in chapter XVII if the court has a substantial and compelling reason for that departure and states on the record the reasons for departure. . . ." MCL 769.34(3), 2002 PA 666.

[2] MCL 750.1 *et seq.*

[3] MCL 760.1 *et seq.*

sentences for some crimes, minimum and maximum sentences for others, and establishing the sentencing guidelines. *Babcock*, 469 Mich at 263. "The Legislature adopted these guidelines intending to reduce unjustified disparities in sentencing." *Id*. at 267 n 21. Accord *People v Garza*, 469 Mich 431, 434-435; 670 NW2d 662 (2003). Additionally, the Legislature has provided maximum possible sentences for persons convicted of CCW and witness retaliation. In MCL 750.227(3), the Legislature provided that an individual convicted of CCW may be imprisoned for not more than five years. In MCL 750.122(8), the Legislature provided that an individual "who retaliates, attempts to retaliate, or threatens to retaliate against another person for having been a witness in an official proceeding is guilty of a felony punishable by imprisonment for not more than 10 years." These maximums are expressions of the Legislature's determination of the proper punishment for each offense.

However, the Legislature's thinking on criminal sentencing is also expressed in MCL 769.12, where it has provided for "escalating penalties for offenders who are repeatedly convicted of felonies." *People v Gardner*, 482 Mich 41, 44; 753 NW2d 78 (2008). Defendant was sentenced as a fourth-offense habitual offender, and MCL 769.12(1)(b) provides that where the maximum term of imprisonment for a first conviction of the subsequent felony is 5 years or more, as is the case here, a court may sentence the individual convicted of the subsequent felony "to imprisonment for life or for a lesser number of years." That the range of possible sentences is expansive is a recognition of the considerable number of possible distinctive contexts that a sentencing court can be presented with when dealing with recidivist offenders.

Some factors pertinent to an appellate court considering whether the guidelines adequately reflect relevant aggravating factors, and thus reflect a proportionate sentence range, include "(1) whether the guidelines accurately reflect the seriousness of the crime; (2) factors not considered by the guidelines; and (3) factors considered by the guidelines but given inadequate weight." *People v Dixon-Bey*, 321 Mich App 490, 525; 909 NW2d 458 (2017) (citations omitted).

Here, the guidelines encapsulated a number of relevant aggravating factors. PRV 1 was scored 25 points for defendant's 2002 armed-robbery conviction (a class A crime). MCL 777.16y; MCL 777.51(1)(c). PRV 2 was scored 20 points for defendant's 1998 conviction of assault with a dangerous weapon (a class F crime) and CCW (a class E crime), and his 1995 CSC-IV conviction (a class G crime). MCL 777.16d; MCL 777.16m; MCL 777.16y; MCL 777.52(1)(b). PRV 3 was scored 25 points for defendant's two prior juvenile adjudications for CSC-II (a class C crime). MCL 777.16y; MCL 777.53(1)(b). With respect to his retaliation-against-a-witness conviction, PRV 6 was scored 20 points because defendant was serving his armed-robbery sentence when the offense was committed. MCL 777.56(1)(a). And PRV 7 was scored 20 points because defendant "has two or more subsequent or concurrent convictions." MCL 777.57(1)(a).

Further, in general, the circumstances of the criminal activity underlying the CCW and witness-retaliation convictions are reflected in the scoring of the offense variables. For both convictions, OV 13 was scored 25 points because the respective offenses were part of "a pattern of felonious criminal activity involving 3 or more crimes against a person." MCL 777.43(1)(c). For the CCW conviction, OV 9 was scored 10 points because between two and nine individuals were put in danger by a folding knife with an almost 7-inch blade discovered on defendant by police during a search incident to arrest. MCL 777.39(1)(c). Regarding the witness-retaliation conviction, the contents of the letter defendant sent to CB informed the scoring of OVs 4, 7, 10,

-6-

and 19. OV 4 was scored 10 points for the psychological injury inflicted on CB. MCL 777.34(1)(a). OV 7 was scored 50 points for the sadistic psychological abuse inflicted by the egregious, violent, and vile language and imagery used by defendant in the letter. And defendant authoring and sending the letter to a then-13-year-old girl constitutes purposeful, predatory conduct aimed at her in order to exploit her vulnerability. MCL 777.40(1)(a). Finally, the threats of violence that punctuate the letter are accounted for in the 15 points scored for OV 19. MCL 777.49(b).

Based on the foregoing, the guidelines clearly accounted for a number of relevant factors specific to defendant's offenses and his history. Nevertheless, other relevant circumstances were not accounted for in the guideline scores. For example, the PRV score does not account for defendant's two probation violations for indecent behavior. Additionally, the guidelines do not illustrate the brazenness of defendant's criminal actions. All of defendant's sexual misbehavior (criminally charged or not) occurred in areas open to the public. Some occurred in locations designated for women only, particularly areas where the women were especially vulnerable by the location's function and semi-isolated configuration (for example, a bathroom or a shower).

Moreover, defendant's criminal history evidences an escalation in violence. As a juvenile, he abruptly grabbed several women, sometimes from behind. On one occasion he told the woman, "I want some pussy." His first felony conviction as an adult was based on his having approached a woman from behind and "grabbing he in her pubic area." However, his second adult felony conviction stemmed from his 1997 attack on a woman while brandishing a knife. Defendant confronted the woman as she exited a bathroom stall. When the victim tried to leave, defendant grabbed her arm and put the point of the blade against her throat. She asked him what he wanted, and he stated that he just wanted to kill her. Defendant again used a knife when attacking CB four years later. And this time, the victim was injured by the knife.

Additionally, the letter defendant sent to CB shows, at the very least, that defendant has no hesitancy in making shocking and appalling threats of violence. Defendant repeatedly threatened to rape, torture, and kill then-13-year-old CB. He described sexually assaulting her with a baseball bat. Less than one year after the September 11, 2001 terrorist attacks, he claimed to be a terrorist, pledged allegiance to Osama bin Laden, and spoke of an intent to kill the President. This might be seen by an adult as pretentious hyperbole, but his target was a 13-year-old girl that he had held at knife point.

There is also the issue of timing. Defendant committed assault with a deadly weapon roughly three months after his release from prison for his first CSC-IV conviction. He assaulted CB the same day he was released from prison for his first CCW conviction. And he committed the crime of witness retaliation while in the first months of his 45- to 100-year prison term for armed robbery. This evidences the ineffectiveness of any past efforts at rehabilitation, and calls into serious question his devotion to rehabilitation and the likelihood it will ever succeed.

In sum, the extent of the departures in this case are undeniably substantial, and other courts might have imposed different sentences under these same circumstances, but this does not mean that the sentences violated the principle of proportionality. The trial court articulated appropriate reasons for why such severe sentences were warranted in this case, and in doing so it considered both the nature of the offenses and the background of defendant. Accordingly, the trial court's

decision to sentence defendant to life imprisonment with the possibility of parole for his witness-retaliation and CCW convictions was not outside the range of reasonable and principled outcomes because defendant's sentences were consistent with the principle of proportionality.[4]

Affirmed.

/s/ Christopher M. Murray
/s/ Colleen A. O'Brien
/s/ James Robert Redford

---

[4] In a supplemental brief, defendant asserted that, on the basis of *People v Parks*, 510 Mich 225; 987 NW2d 161 (2022), this Court should conclude that defendant's sentences were disproportionate based on defendant's assertion that he lives with an intellectual disability. Defendant's reliance on *Parks* is inapposite. *Parks* addressed the imposition of mandatory life-without-parole sentences on 18-year-old defendants. Defendant was older than 18 when he committed the crimes at issue, and he was sentenced to life with the possibility of parole, not mandatory life without parole. We decline defendant's invitation to broaden *Parks'* holding and apply it outside of 18-year-old defendants sentenced to life imprisonment without the possibility of parole.